United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Ralph Musilli,                                              Case No. 06-55963-R
           Debtor.                              Chapter 7
_____/

Opinion

On October 31, 2006, Ralph Musilli filed a voluntary chapter 7 bankruptcy petition. On his schedule B, Musilli disclosed "Merrill Lynch CMA account, joint with wife" as an asset with a value of $110,744.36. On schedule C, Musilli claimed the full value of the account exempt pursuant to Mich. Comp. Laws § 600.5451(1)(o). Fred J. Dery, the trustee, filed an objection to the exemption on February 19, 2007.

The trustee objects to the exemption on several grounds. First, the trustee asserts that cash management accounts do not qualify for exemption under the Michigan statute. Second, the trustee asserts that the CMA account is not held as tenancy by the entireties. The trustee also asserts that Musilli used and controlled the account as his own, depositing his own funds and withdrawing them for his own use, and that Mrs. Musilli is not entitled to half the funds in the account.

Musilli filed a response to the objection. Both parties filed several briefs on the issues. On May 29, 2008, the Court held an evidentiary hearing. At the close of the hearing, the parties agreed to hold the matter in abeyance pending a ruling from the Michigan Supreme Court in the case, *Zavradinos v. JTRB, Inc.*, 753 N.W.2d 60 (Mich. 2008). (The parties refer to this as "the *Probert* case.") On May 7, 2008, the Michigan Supreme Court heard oral argument on the matter. On July 18, 2008, the Michigan Supreme Court issued an order denying leave to appeal. The order also

included several opinions by the justices of the Michigan Supreme Court.

On December 12, 2008, the Court held a status conference in the present case. At that time, Musilli asserted that the *Probert* case was directly on point and that the trustee's objection should be overruled. The trustee asserted that the *Probert* case was distinguishable on factual and legal grounds. Both parties declined to file any further briefs.

I. Musilli's Cash Management Account qualifies under M.C.L. § 557.151.

M.C.L. § 600.5451(1)(o) provides:

> Property described in section 1 of 1927 PA 212, MCL 557.151, or real property, held jointly by a husband and wife as a tenancy by the entirety, except that this exemption does not apply with regard to a claim based on a joint debt of the husband and wife.

M.C.L. § 557.151 provides:

> All bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife, or made payable to them as endorsees or assignees, or otherwise, shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real estate held jointly by husband and wife under the laws of this state, with full right of ownership by survivorship in case of the death of either.

The first issue is whether the CMA account qualifies under M.C.L. § 557.151. The trustee asserts that a "cash management account" is not actually "bonds, certificates of stock, mortages, promissory notes, debentures or other evidences of indebtedness." Rather, the trustee argues, a CMA account is really only a fund on deposit with a financial institution, which it uses to purchase stocks, bonds and other assets to create interest to pay to account holders. On the other hand, Musilli asserts that this type of account was not in existence at the time the Michigan statute was

2

written, but that the fund on deposit is converted into stocks and bonds, or is at least "evidence of indebtedness."

On October 15, 2007, during a hearing on the trustee's motion, the Court held that M.C.L. § 557.151 can include a cash management account such as the account that Musilli exempted. In the *Probert* case, the Michigan Court of Appeals held that the "stock accounts" qualified for exemption pursuant to M.C.L. § 557.151. The type of account held in the present case is similar to the type of account in the *Probert* case. *Zavradinos v. JTRB, Inc.*, 753 N.W.2d 60 (Mich. 2008). Accordingly, the Court reaffirms its holding that CMA type accounts are included in M.C.L. § 557.151.

II. Musilli's Cash Management Account is not held as tenancy by the entireties.

The second issue in the present case is whether the particular CMA account in the present case is held as tenancy by the entireties.

Under Michigan law, property obtained by a husband and wife is presumed to be held as tenancy by the entireties. M.C.L. §§ 554.44, 554.45 However, that presumption can be overcome by the use of specific language or by factual evidence that spouses did not intend to hold the property in such a manner. *Zavradinos*, 753 N.W.2d at 69. *See also De Young v. Mesler*, 130 N.W.2d 38 (Mich. 1964).

In the present case, Ralph Musilli and Lynne Hoover Musilli were not yet married when Musilli opened the CMA account. On the paperwork adding Lynne Hoover to the account, the box for joint tenancy with rights of survivorship is checked, while the box for tenancy by the entireties is not checked.

The trustee argues that these two facts establish that the account could not have been and was not created to be an account held as tenancy by the entireties. Moreover, the trustee argues that the

3

account could not and did not convert to a tenancy by the entireties upon the marriage. Rather, the trustee asserts that Musilli and his wife would have needed to close the account and then reopen it to change its status. The trustee asserts that requiring closing and reopening the account would be similar to real property, which cannot be held as tenancy by the entireties by an unmarried couple, and does not convert to tenancy by the entireties upon their marriage absent a new deed re-conveying the property to change its status. *Howell v. Wieas*, 205 N.W. 55, 56 (Mich. 1925) (Husband, owning land and desiring to create an estate by entirety, should deed to a third party who in turn deeds to both husband and wife.) *See also Union Guardian Trust Co. v. Vogt*, 248 N.W. 639, 640 (Mich. 1933).

Musilli asserts that the account was opened in anticipation of the marriage and was intended to be held as tenancy by the entireties. Musilli argues that the check mark for joint tenants cannot overcome the presumption of tenancy by the entireties. Musilli relies upon the *Probert* case, in which the Michigan Court of Appeals found that the check mark alone could not overcome the presumption.

The Court concludes that the *Probert* case is factually distinguishable from the present case in a very important way. The Proberts were married when they opened their stock account. Because they were married, the presumption existed that they would hold the property as tenancy by the entireties. While Michigan law clearly makes this presumption difficult to overcome, the presumption is not applicable in the present case. The fact, acknowledged by Musilli, is that he and Lynne Hoover Musilli were not married at the time the account was opened. In fact, the account at one time belonged solely to Ralph Musilli. On July 8, 1999, Musilli signed a form authorizing Merrill Lynch to add Lynne Hoover to the account. At the same time, Ralph Musilli and Lynne Hoover signed a "Joint Account Agreement" which indicated that the account would be held as "Joint Tenancy with Right of Survivorship." Additionally, in the *Probert* case, the Proberts did not sign the page on which the nature of the tenancy was marked. In the present case, both Ralph Musilli and

4

Lynne Hoover's signatures appear on that page.

As Musilli's counsel conceded during the October 15, 2007 hearing, because they were not married, Ralph Musilli and Lynne Hoover could not hold property as tenancy by the entireties. The CMA account was a joint tenant account, as indicated on the paperwork adding Lynne Hoover to the account.

Moreover, the Musillis did not convert the account to be one held as tenancy by the entireties. There is no evidence that the Musillis requested a change in the manner the accounts were held, nor did they close the account and open a new CMA under a tenancy by the entireties. Under Michigan law, the nature of a conveyance must be determined under the terms and according to the facts at the time of the execution. *Williams v. Dean*, 97 N.W.2d 42, 44 (Mich. 1959). In *Williams*, the appellants asserted that since they were eventually married they held the real property in question as tenants by the entireties. However, the Michigan Supreme Court rejected that argument stating:

> No such estate arises from even the most explicit words in a conveyance to a man and woman who are not husband and wife, even though they are described as such in the instrument of title, and are believed by the grantor or devisor to be legally married. It is immaterial that they intermarry after title vests in them, even though the conveyance is made to them in anticipation of their intermarrying. In any such instance only a tenancy in common, with or without a right of survivorship, or a joint tenancy, can arise, depending on the wording of the conveyance or devise, the construction given it, and the state of the law relating to joint tenancy and tenancy in common in the particular jurisdiction in question.

*Id.* at 44-45.

Accordingly, the Court finds that the CMA account is not held as tenants by the entireties and is not eligible for exemption pursuant to M.C.L. § 600.5451(1)(o).

### III. The trustee is entitled to recover $76,100.

When property is held in joint tenancy, there is a presumption that each party is entitled to half of the proceeds of the property. *Danielson v. Lazoski*, 531 N.W.2d 799, 801 (Mich. App. 1995); *Czajkowski v. Lount*, 52 N.W.2d 642( Mich. 1952). However, this presumption may be over come if the creditor or trustee can prove that the debtor contributed more of the funds. *Danielson*, 531 N.W.2d at 801.

Musilli asserts that his wife contributed practically all of the money in the account. Musilli and Lynne Hoover Musilli both testified that after she was added to the account, she contributed the proceeds from the sale of real property that she owned solely. However, Musilli did not provide any evidence of this transaction. Moreover, Musilli also testified that of the original funds that Lynne Hoover Musilli contributed, none remained at the date of the bankruptcy filing. Lynne Hoover Musilli also testified that she did not consider the account to be her sole funds, but rather joint funds that she and Musilli were equally entitled to withdraw without the other's authorization.

The trustee asserts that Musilli individually contributed $58,000 to the account within ninety days prior to the bankruptcy filing. The trustee also asserts that Musilli and Lynne Hoover Musilli jointly contributed $36,200 in 2002, of which half is directly attributable to Musilli. Accordingly, the trustee asserts that $76,100 of the account funds are directly attributable to Musilli and are recoverable by the trustee.

The account statements and cancelled checks admitted into evidence support the trustee's tracing of the funds in the account. On August 30, 2006, Musilli deposited a check for $50,000 from his account at FirstState Bank into the Merrill Lynch CMA account. On September 9, 2006, Musilli deposited a check for $8,000 from his account at FirstState into the Merrill Lynch CMA account. Musilli asserts that the FirstState account is a joint account with Lynne Hoover Musilli. However, the face of the check only bears Ralph Musilli's name and Musilli did not provide any documentary

6

evidence to prove that the FirstState account is a jointly held account.

Musilli argues that the $50,000 and $8,000 deposits were "repayment" of margin loans and were not in fact contributions to the account. Therefore, Musilli asserts that those funds are not attributable directly to him.

However, once the funds were withdrawn from the account, whether as a margin loan or a direct withdrawal, the funds lost their joint tenancy nature. Musilli withdrew the funds and used them for his own purposes. He presented no evidence that the, $50,000 deposit or the $8,000 deposit came from a joint account. Therefore, the Court finds that those deposits are directly traceable to Musilli and that the trustee may recover these funds.

As to the $36,200 deposit, the trustee provided evidence that it came from a jointly held account and Musilli testified to the same effect. Accordingly, half of that amount was presumptively Musilli's property.

The Court finds that the trustee has established that $76,100 of the funds held in the CMA account are directly attributable to Musilli. Therefore, the trustee has overcome the presumption that Musilli is only entitled to half of the proceeds of the account. Accordingly, the trustee is entitled to recover $76,100 pursuant to 11 U.S.C. § 542(a).

The Court will enter an order.

**Signed on March 13, 2009**

                                                **/s/ Steven Rhodes**
                                                **Steven Rhodes**
                                                **Chief Bankruptcy Judge**